## J. W. M. LONG v. THE STATE.

1. CHARGE OF THE COURT.— ALIBI, equally with any other defense interposed to a prosecution, when the evidence tends to support it in any degree, is the subject of explanation by charge, and the refusal of a proper charge thereon is error.

2. SAME — EVIDENCE.— See this case for circumstances under which it was proper for the court to admit evidence of the defendant's possession of other animals at the time he was found in possession of the animal charged to be stolen, but whereunder the court should have explained the legal effect of such evidence.

APPEAL from the District Court of Guadalupe. Tried below before the Hon. E. LEWIS.

The conviction was for the theft of a cow, the property of Charles Gaebler, on the 3d day of April, 1881. The punishment assessed was a term of three years in the penitentiary.

Charles Gaebler testified that he lived at Yorktown, in DeWitt county. In the spring of 1881 he was notified by the sheriff of Guadalupe county that the latter had some cattle in his charge at Seguin, in said county. In company with Messrs. Friar, Raeder, Edwards and House, the witness went to the herd and found his cow, the animal in controversy, and recognized her by flesh-marks and the brand F. G. This animal ranged in DeWitt county between Salt and Tumlinson's creeks. The witness saw her on the range about two weeks before he found her in the herd. He did not know who stole or drove her off, but had given no one permission to do so.

Alf. Friar testified, for the prosecution, that he lived about fifteen miles distant from the witness Gaebler. The witness found some of his own and some of Edwards's cattle in the herd in Guadalupe county. (This evidence was objected to by defendant.) The witness, with Gaebler and others, got back to their range on Salt creek in De Witt county, from the herd in Guadalupe county, about May 5th. All the parties who recovered cattle from the herd had cattle running on the Salt creek range. During the month of April, 1881, one or two men could have gathered forty or fifty head of cattle on the Salt creek range in thirty minutes.

The testimony of L. E. Edwards, for the prosecution, was identical with that of the last witness, except that he stated in addition that he did not see the defendant in the Salt creek neighborhood during the month of April, 1881.

J. V. Reader's testimony, for the State, was corroborative of that of Friar in its entirety, he being one of the party present when the animal was recovered from the herd. It would, according to this witness, take two days to drive forty or fifty head of cattle from the Salt creek neighborhood to Seguin, driving in the day-time, but they might be rushed through in twenty-four hours.

George Porter, for the State, testified that he lived with Mitchell Caraway in Guadalupe county. He spent one night, during the spring of 1881, at Marsh. Newsom's, and on that night three men penned a herd of forty or fifty cattle at Newsom's, and camped for the night. The cattle were being driven towards Seguin, where this trial was had. One of the men called the other "Marcus Tyler." The witness could give no general description of the men as he saw them on the occasion referred to, but concluded his testimony by declaring that he could not be mistaken in asserting that the defendant was one of the men he saw with the cattle at Newsom's.

Mitchell Caraway testified for the prosecution that, on the morning after the last witness spent the night with Newsom, he saw three men pass his house, driving a herd of forty or fifty cattle, and he believed that the man Marcus Tyler was one of them. The witness subsequently saw this herd of cattle going back in the direction from whence they came, in charge of a party of men of whom one was the witness Edwards.

Lewis Carter saw a herd of forty or fifty cattle in April, 1881, going towards Seguin on the route indicated, in charge of two or three men, none of whom he recognized; and saw the cattle afterwards returning in charge of Edwards and others.

S. Anderson testified that, in April, 1881, at another point on the route he saw such a herd of cattle as that described, in charge of three men, none of whom he knew. The herd included a brown cow branded G. F. or F. G.; the witness thought the latter was the brand. None of the men were dressed as the defendant was dressed on this trial. Subsequently the witness saw the same herd returning in charge of Friar and others. One of the men having charge, going towards Seguin, rode a bay horse, another a brown, and the third rode a bay and led a sorrel, or rode a sorrel and led a bay.

J. A. Martin, railroad agent at Seguin, testified that two men came to the depot in April, 1881, and purchased tickets to San Antonio, but he did not know that these men were defendant and Tyler. After they left on the train, the witness saw two horses hitched near by, and found two saddles in the wareroom. Mr. June Coorpender told the witness that one of the horses belonged to a man named Tyler, but did not mention Tyler's given name. The two men returned in a few days, got their horses, and rode off with June Coorpender.

The date of the occurrence of a heavy storm was important in fixing a material question of time in this case,

and this was shown by the weather record of a witness to have occurred on the night of April 20, 1881.

The sheriff of Guadalupe county testified that, during the month of April, 1881, he found a herd of forty or fifty head of cattle loose on the range, in Guadalupe county; that he did not know how they got there, nor did he know of anyone who did. He afterwards ascertained that they were turned loose there on the night of the storm, or afterwards. On the morning after the storm he found two horses and two saddles at the depot. He wrote to the sheriff of De Witt about the cattle, and on the first Saturday in May they were turned over to the parties from De Witt previously named. Some of the cattle were branded F. G.

Wm. Miller, an employee about the depot, testified that, on the morning following the storm, two men left two saddles with him, and two horses tied near by. He did not then know, nor has he since known them. In reply to the witness's inquiry about the horses, they said that June Coorpender would come and get them. When the men returned next day they started towards town, met June Coorpender, and turned back.

June Coorpender testified for the State that he was directed by the sheriff to take charge of the herd of cattle, and did so. He did not know how they got to that range. He saw them before the storm, and no one was then in charge of them. He got the horses at the depot on the day following the storm, being the 20th of April. He did not see the saddles. Tyler was a witness in a case in San Antonio which was set for the 18th. The witness heard that it had been continued, and expected the return of defendant and Tyler on the train on which they came. The witness took their horses to the depot but once,— on the day of their return from San Antonio. He did not hear either defendant or Tyler say anything about bring-ing the cattle to Seguin. The defendant and Marcus

Tyler drove thirty or thirty-five head of cattle to Seguin; ten or fifteen of which the witness bought. Those he purchased had been inspected.

Joe Sitterlee testified for the State that Tyler was a witness for him in his trial pending in San Antonio. He had never talked to the defendant about being a witness in the case. The witness, on his return from San Antonio, on the 19th or the 20th day of April, met the defendant at Marion, *en route* to San Antonio, and from conversation with him got the impression that he took some cattle with him to Seguin, when he went there with Tyler to go to San Antonio. Witness could not, however, remember the language of the defendant on that occasion.

The testimony of one witness authorizes the inference that he had been sworn in a previous proceeding against the man Marcus Tyler concerning the same cattle.

The defense relied upon was an *alibi.* It was shown by several witnesses that, during the month of April, 1881, the defendant lived and was a cropper on M. A. Tyler's place, near Riddleville in Karnes county. W. O. Hutchison testified that he saw the defendant at witness's house on the 1st day of April, and at church in Riddleville on the 3d day of April; and witness was at his home continuously from the 1st to the 15th days of April, 1881, and at no time saw defendant in possession of any cattle to which he was not entitled.

Tom Newman testified that a dancing school was in progress in the neighborhood of Tyler's during April, 1881, commencing on the 1st, and continuing three weeks. During the first week it met on Mondays, Tuesdays and Wednesdays, and during the second and third weeks on Mondays, Wednesdays and Fridays. The witness saw the defendant in attendance every night except the first two. During this time he saw him often in the day time at Tyler's, and once in Riddleville.

Sonny Newman testified that he saw the defendant at

Hutchison's on the 1st of April, at Tumlinson's on the 7th of April, and on the 12th of April *en route* to Cuero, from which place he returned on the 15th, and also saw him afterwards, but could not remember the dates.

John T. Tyler saw the defendant at church on the third Sunday in April, 1881, and saw him again on the 18th day of April, at twelve o'clock, when he left witness's house going to San Antonio as a witness.

M. A. Tyler testified for the defense that he sent the defendant to Cuero on April 12th; from which place he returned on the 14th. The defendant lived with the witness, and was seen by him at his house continuously until the trip to Cuero. The witness went to San Antonio on April 16th, as a witness in the Cox, Ryan and Sitterlee case, and reached Stockdale on his return on April 19th, the night of the storm. The defendant reached home from San Antonio on April 23d.

Others testified to seeing the defendant about the neighhood of Riddleville from the 1st of April until the 18th, at intervals. Mrs. Tyler stated that she saw the defendant about her house, where he lived, almost every day and night during April until he and Marcus Tyler went to San Antonio as witnesses, on the 18th, except during his absence at Cuero extending from the 12th to the 18th. Defendant and Tyler took no cattle with them when they went to San Antonio.

June Coorpender testified that the defendant and Marcus Tyler drove a bunch of more than twenty head of cattle to Seguin during the spring of 1881; some of them were branded M. T. Of these the witness purchased a number.

*Eckford & Newton,* for the appellant.

*Horace Chilton,* Assistant Attorney General, for the State.

Hurt, J.   Appellant Long was convicted of the theft of a cow.

*Alibi* was the defense, and it was very strongly supported by the evidence. A charge upon this defense was requested and refused; to which ruling the defendant excepted. This was error; for, by a long line of decisions, the law applicable to every defense presented by evidence, whether strongly or feebly supported, must be given in the charge to the jury. *Alibi* is an attack upon guilt and hence a defense; and the rule requires its presentation in the charge. It is not only proper, but, being a defense, it is the imperative duty of the court below to explain its nature and character by a direct charge thereon. *Deggs* v. *State,* 7 Texas Ct. App. 359; *McGrew* v. *State,* 10 Texas Ct. App. 539.

The court, over objections of defendant, permitted proof that other stolen cattle were in the bunch with which the cow charged to have been stolen was driven to Seguin. In this there was no error, in view of the peculiar facts of this case. The most difficult thing on the part of the prosecution was to connect defendant with the possession of the cow charged to have been stolen. To do this it was necessary to describe and identify the herd with which she was when taken to Seguin. To do this, evidence that other cattle from the same range were taken at the same time was proper. Some of the State's witnesses were able to identify the herd, but not the cow in question; others the herd; and stated the fact that the cow charged to have been stolen was with it. The herd being thus identified, the State attempted to connect the defendant with it (the herd); thus showing his connection with or possession of the animal charged to have been stolen. We are of the opinion that under the circumstances of this case these facts were admissible; but most evidently it was the duty of the court to have informed the jury of the purpose for which this evidence had been admitted.

The other errors or irregularities complained of will not be passed upon; for it is not probable that upon another trial the questions will again arise. The court erred in refusing to give the charge requested upon the defense, to wit, *alibi;* for which error the judgment must be reversed.

The defendant did not request a charge upon the purpose of the evidence tending to show other offenses.

The judgment is reversed and the cause remanded. *Reversed and remanded.*